# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-1507

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PELETI PELETI, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 06-40117—**Michael M. Mihm**, *Judge.*

ARGUED DECEMBER 3, 2008—DECIDED AUGUST 4, 2009

Before EASTERBROOK, *Chief Judge,* and MANION and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.*   During the time he was stationed in Kuwait, Peleti Peleti, Jr., then a Chief Warrant Officer in the U.S. Army, accepted a bag containing $50,000 from a local contractor who sought Peleti's help in obtaining a contract to supply flatware and paper products to the U.S. Army in Iraq. Peleti pleaded guilty to bribery and smuggling bulk cash into

the United States, but he later changed his mind and tried to persuade the district court to allow him to withdraw his guilty plea. We conclude that the district court did not abuse its discretion by denying the motion; the factual basis for the bribery plea establishes that Peleti committed bribery, Peleti received effective assistance of counsel, and any ineffective assistance did not prejudice Peleti. We therefore affirm.

## I

In 2005, Peleti served as the Army Theater Food Service Advisor for Kuwait, Iraq, and Afghanistan. Stationed in Kuwait, Peleti advised his superiors on the food service program, monitored existing food service contracts, and helped develop new contracts. One of the suppliers Peleti worked with was Gulf Catering Company. Peleti developed a relationship with the company's Chief Executive Officer, Ibraham. (Whether Ibraham is the CEO's first or last name is unclear from the record; we therefore refer to him simply as Ibraham and adopt the spelling used by Peleti in his written statement.)

Ibraham sought a contract with the U.S. Army to supply paper products and plastic flatware in Iraq. Peleti recommended to his superiors that the U.S. Army award the contract, but his superiors informed Peleti that a 2001 contract with Kellogg, Brown & Root Services, Inc., prohibited the U.S. Army from contracting with another company. Peleti relayed this information to Ibraham and told him that "there was no way" Gulf Catering Company could get the desired contract. Peleti also told

Ibraham that he would be leaving his position in Kuwait in December 2005.

Before Peleti left Kuwait, however, he and Ibraham met privately in Ibraham's office. Our knowledge of what occurred during that meeting comes from a written statement Peleti gave to investigators on July 25, 2006, and Peleti's admissions to the district court during his plea colloquy. Peleti's appeal accepts these statements as true, and so we do the same.

The meeting occurred in the first week of December 2005, less than two weeks before Peleti left Kuwait on December 14, 2005. At the meeting, Peleti told Ibraham several times that Gulf Catering Company would not receive the contract for paper products and plastic flat-ware. Ibraham listened, but persisted in asking Peleti, "Well, see if you can continue." Ibraham then gave Peleti a bag containing $50,000. Peleti accepted the money.

Peleti never told Ibraham that Peleti could secure the contract for Gulf Catering Company, but at the same time, Peleti knew that Ibraham gave him the money in order to influence Peleti to do what he could to get the contract for Ibraham. This is clear from a question the district court asked Peleti: "At the time you received the money, actually got it in your hand from him, was it your belief that he was giving this to you for the purpose of influencing your official actions?" Peleti answered, "Yes, Your Honor."

Peleti maintained contact with Ibraham after Peleti left Kuwait. The district court asked Peleti if he had phone calls with Ibraham after receiving the $50,000 and Peleti

answered yes. He referred to "conversations" with Ibraham and stated that during one of those conversations he told Ibraham that Gulf Catering Company still could not receive the contract.

The government charged Peleti with receipt of a bribe by a public official, in violation of 18 U.S.C. § 201(b)(2)(A), smuggling bulk cash into the United States, in violation of 31 U.S.C. § 5332, and criminal forfeiture. On February 9, 2007, while represented by attorney Donovan Robertson, Peleti waived indictment and pleaded guilty to all three counts.

After the district court accepted the guilty plea, but before sentencing, Peleti replaced Robertson with his current attorneys. Peleti then filed a motion under FED. R. CRIM. P. 11(d)(2)(B) to withdraw his guilty plea. That motion offered two "fair and just reasons" to withdraw the plea: (1) there was no factual basis for the guilty plea to bribery, as required by FED. R. CRIM. P. 11(b)(3); and (2) the plea was involuntary because Peleti received ineffective assistance of counsel—specifically, Robertson failed to consider whether Peleti committed the offense of accepting an illegal gratuity rather than bribery and failed to investigate the charges.

The district court denied Peleti's motion to withdraw his guilty plea. It found that Peleti, by accepting the money during a private meeting with Ibraham after Ibraham asked Peleti, "Well, see if you can continue," conveyed to Ibraham that the money would influence Peleti's official actions. The court explained its ruling as follows:

> [I]t seems very clear to me that when he took that money, he was in effect saying to that guy, "In spite

of what I've said concerning this situation, you're asking me to continue seeing what I can do to try to influence this decision and I'm accepting this money under those conditions." That seems to me to be a reasonable inference.

Because the facts show that Peleti represented to Ibraham that the money would influence his official action, the court reasoned, Peleti's guilty plea had a basis in fact.

The district court considered the ineffective assistance claim a closer call, but it ultimately held that Robertson provided adequate assistance for both the bribery count and the smuggling count. The court heard testimony from Robertson and Peleti, but it rejected Peleti's testimony as "totally lacking in credibility" while accepting Robertson's testimony as credible. Because Peleti does not challenge this finding on appeal, the factual summary below is based on Robertson's account.

By the time Robertson was appointed to represent Peleti in August 2006, Peleti had already given his written statement to investigators. In that statement, Peleti makes several damning admissions, including the following: he experienced "numerous approaches from the contractors themselves for Bribery for monies and Gifts"; he received gifts, including "approximately $8,000 [sic] Iraqi Dinar in exchange for [a] new contract"; he met with Ibraham to discuss a flatware and paper product contract and developed a relationship with Ibraham; he received $50,000 from Ibraham in cash; he stored the cash in his barracks and spent $30,000 on credit card bills, $10,000 on jewelry for his wife, and the rest on vacations and

his family. In addition, Peleti expressed regret at his actions and stated that he "will fully cooperate with the investigation at hand." Robertson considered this statement powerful evidence against Peleti, and the district court agreed. Robertson also learned from the government that it possessed a copy of a currency card signed by Peleti upon his return to the United States on December 14, 2005, on which Peleti swears to bringing less than $10,000 into the United States. The government also had a credit card statement showing a $15,000 payment to Peleti's wife's credit card on December 31, 2005.

Robertson had several meetings with Peleti. During these meetings, Peleti affirmed the written statement and said that he wanted to continue in that "mode." Robertson considered whether the statement could be suppressed, but saw no legal basis for such a motion. (Peleti does not question this conclusion.) Peleti admitted to Robertson that he carried about $40,000 in cash into the United States[1] and indicated that when he took the money from Ibraham, he knew Ibraham intended the money to influence an official action—specifically, to influence Peleti to do what he could to get Ibraham the food service contract.

---

[1] We recognize the discrepancy between what Peleti received— $50,000—and what he admits to bringing back into the United States—approximately $40,000. But we recite the facts as recounted by Peleti during his plea colloquy and as described by Robertson in his testimony. (Perhaps Peleti spent $10,000 in Kuwait.)

After speaking with Peleti, Robertson read the bribery statute and the Seventh Circuit model jury instructions for bribery. Those materials, taken together, indicate that a defendant commits bribery if he accepts money knowing that the donor intends the money to influence an official act. Based on his research, his discussions with Peleti, and the written statement, Robertson concluded that Peleti had committed the crimes of bribery and smuggling of cash, and that a jury would likely convict Peleti on both counts. Robertson discussed his evaluation of the facts and the likely outcome of a trial with Peleti and recommended that Peleti plead guilty. Robertson also discussed on at least 15 different occasions the effect of taking the case to trial compared with pleading guilty. He explained to Peleti how a reduction for the acceptance of responsibility would reduce Peleti's sentencing range. In addition, Robertson repeatedly assured Peleti that if Peleti decided to go to trial, Robertson would aggressively represent him.

During the plea hearing, the district court read the charges and portions of the plea agreement to Peleti. It then asked Peleti if he had "fully discussed those charges and the case in general, including any possible defenses that you might have, with Mr. Robertson" and if Peleti was fully satisfied with Robertson's representation and advice. Peleti answered in the affirmative to both questions.

The district court found Robertson's representation adequate because of Peleti's admissions in the written statement, Peleti's expressed desire to plead guilty, and

Peleti's admissions of guilt to Robertson. The court acknowledged Robertson's limited factual investigation, but reasoned that Robertson reasonably focused his efforts on getting the best plea. Furthermore, the district court found that Peleti failed to show prejudice from Robertson's alleged ineffective assistance because it found that Peleti would have pleaded guilty anyway.

Based on these findings, the district court denied Peleti's motion to withdraw the guilty plea. It later sentenced Peleti to 28 months' imprisonment, a $7,500 fine, and a $200 special assessment. It also ordered Peleti to forfeit to the government certain personal property and entered a money judgment in favor of the United States for $50,000. Peleti appeals the denial of his motion to withdraw his guilty plea.

## II

A court may allow a defendant to withdraw a guilty plea before sentencing if the defendant presents a "fair and just reason" for doing so. FED. R. CRIM. P. 11(d)(2)(B). We review the district court's decision not to allow the withdrawal of a guilty plea for an abuse of discretion and review the court's factual findings for clear error. *United States v. Carroll*, 412 F.3d 787, 792 (7th Cir. 2005).

As we mentioned above, Peleti offered two "fair and just reasons" for withdrawing his guilty plea: (1) no factual basis establishing that Peleti committed bribery (as opposed to taking an illegal gratuity); and (2) ineffective assistance of counsel. We first address Peleti's challenge to the factual basis.

To ensure that a defendant's actions match the crime to which she pleads guilty, Rule 11(b)(3) requires a court to "determine that there is a factual basis for the plea." Peleti argues that his guilty plea for bribery lacks a sufficient factual basis because it does not establish that Peleti intended to convey to Ibraham that the $50,000 would influence an official action.

Under 18 U.S.C. § 201(b)(2)(A), a public official is guilty of bribery if she

> directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for: (A) being influenced in the performance of any official act . . . .

To commit bribery, the public official must receive the money "corruptly." *United States v. Arroyo*, 581 F.2d 649, 657 (7th Cir. 1978). An officer can act corruptly without intending to be influenced; the officer need only "solicit or receive the money on the representation that the money is for the purpose of influencing his performance of some official act." *Id.* at 652; see also *United States v. Meyers*, 692 F.2d 823, 841-42 (2nd Cir. 1982) (noting that "'being influenced' does not describe the [recipient's] true intent, it describes the intention he conveys to the briber in exchange for the bribe" and holding that an official commits bribery if he gives "false promises of assistance to people he believed were offering him money to influence his official actions"). Peleti acknowledges in his brief that if "he misled the bribe-payor to believe he was going to do a specific official act

in exchange for something in value," then he committed bribery. Peleti argues, however, that he did no such thing and that there exists no factual basis for finding otherwise.

The problem for Peleti is that the district court disagreed and explicitly found that Peleti, by accepting the money after Ibraham asked Peleti to see if he "can continue," conveyed to Ibraham that Peleti would "continue" his efforts to secure the contract for Ibraham in exchange for the money. Peleti argues that this finding is clearly erroneous because Peleti repeatedly told Ibraham that "there was no way" Gulf Catering Company could receive the contract and told Ibraham that Peleti was leaving his position in Kuwait later that month. But Peleti admitted during his plea that he knew, when he accepted the money, that Ibraham gave Peleti the money for the purpose of influencing Peleti's official actions. Under these circumstances, the act of accepting the money speaks louder than Peleti's words. Whether Peleti actually intended to be influenced is irrelevant, so long as Peleti conveyed to Ibraham that the money would influence him. We see nothing clearly erroneous about the district court's finding.

Peleti attempts to turn his appeal into a question of law by arguing that Peleti must have intended to convey to Ibraham that the money would influence an official act and that the facts do not establish such an intent. We do not see the record this way. The district court was entitled to find that Peleti intended to indicate to Ibraham that the money would influence Peleti and that

Peleti would be an advocate for Ibraham's company. And the record shows that the district court made such a finding, albeit less explicitly than it might have. Perhaps Peleti's argument would succeed under different circumstances, such as where the acceptance of the money did not convey to the briber an intent to be influenced, but those circumstances do not exist here.

We now turn to Peleti's claim of ineffective assistance of counsel. Ineffective assistance of counsel can render a plea agreement involuntary, and in such a case, it is a valid basis for withdrawing a guilty plea. *United States v. Lundy*, 484 F.3d 480, 484 (7th Cir. 2007). Indeed, a defendant may withdraw a plea even after it has been accepted, as Peleti's was, if he can show any "fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). Peleti argues only that Robertson provided constitutionally ineffective assistance, and so we address that argument rather than any other possible "fair and just reason" he might have had to withdraw the plea. (We note as well that Peleti's decision to raise this point on direct appeal means that it will not be available to him later. Once we have rejected a Sixth Amendment claim on direct appeal, the law of the case doctrine bars the defendant from raising it in a motion under 28 U.S.C. § 2255. See *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995).)

To show ineffective assistance of counsel, a defendant "must show both that the counsel's performance was objectively unreasonable and that, but for counsel's errors, the defendant would not have pled guilty." *Lundy,* 484 F.3d at 484. A reasonably competent attorney "will

attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty." *Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006).

For the bribery count, Peleti argues that Robertson failed to advise Peleti of a possible defense: claiming that Peleti accepted an illegal gratuity in violation of 18 U.S.C. § 201(c)(1)(B) rather than a bribe covered by § 201(b)(2)(A). To commit bribery, "there must be a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for an official act." *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999) (emphasis in original). In contrast, the illegal gratuity offense requires only that the gratuity be accepted "for or because of" an official act. Thus, an official commits the illegal gratuity offense by accepting money as a thank-you for past help or without a *quid pro quo*. See § 201(c)(1)(B). Peleti points out that in his written statement, he admits accepting the money, but he does not say what the money was for—it could have been a gift for Peleti's past assistance or a gift untied to any specific official action. Robertson never explored alternative explanations for the $50,000 with Peleti, Peleti argues, and Robertson therefore failed to discuss a potentially successful defense with Peleti.

Perhaps Robertson could have devoted more effort to exploring with Peleti the strategy of characterizing the payment as an illegal gift, but Robertson's assistance was effective under the circumstances. Robertson evaluated the powerful evidence against Peleti, most notably

Peleti's written admissions, read the bribery statute and the relevant Seventh Circuit jury instructions, and spoke with Peleti. According to the jury instructions and Peleti's admissions to Robertson, Peleti committed bribery. Additionally, Peleti repeatedly expressed his desire to cooperate with the government, in both his written statement and the meeting with Robertson. Robertson discussed his evaluation of the evidence and possible defenses with Peleti and repeatedly assured Peleti that he would aggressively represent him if Peleti decided to go to trial. Furthermore, Peleti testified during the plea hearing that he was fully satisfied with Robertson's representation and had discussed the plea agreement and possible defenses with him. Choosing to believe Peleti's statements under oath during the plea hearing is within the district court's discretion. The court was also entitled to conclude that Robertson was making a strategic choice to direct his efforts where he did, rather than by pursuing other legal theories including one based on the illegal gratuity statute.

Peleti also asserts that Robertson failed to investigate the evidence adequately. Like the district court, we acknowledge that it might have been better if Robertson had conducted his own investigation rather than rely on the government's explanation of the evidence of bribery, but we evaluate Robertson's performance based on all the circumstances he faced. Given the written statement, Peleti's admissions to Robertson, and Peleti's expressed desire to cooperate, we have no quarrel with the district court's holding that Robertson reasonably decided to focus his efforts on obtaining the best possible plea agreement.

With respect to the smuggling count, Peleti argues that Robertson's assistance was ineffective because Robertson did no investigation beyond asking the government about its evidence. Although this seems minimal at first glance, once again a look at the broader circumstances convinces us that Robertson's failure to do more did not amount to ineffective performance. After all, the government had a devastating case against Peleti, including (1) the written statement in which Peleti admitted to receiving $50,000 in cash in early December, (2) the currency card on which Peleti swore to carrying less than $10,000 into the United States on December 14, 2005, (3) Peleti's admission to spending $30,000 of the money on credit cards, and (4) evidence of a credit card payment of $15,000 on December 31, 2005. While some inferences are required to come up with the conclusion that Peleti smuggled the cash into the United States, it is telling that Peleti has offered no alternative explanation. As Peleti admitted his guilt to Robertson, Robertson reasonably concluded that further investigation was unlikely to turn up evidence exonerating Peleti. Peleti says only that Robertson should have advised Peleti to put the government to its standard of proof, but, given Peleti's admission of guilt to Robertson, Robertson could not have offered testimony by Peleti or Peleti's wife to explain what happened to the money or where the credit card payment came from. Given these circumstances, Robertson's decision not to conduct further investigation and to advise Peleti to plead guilty was within constitutional standards.

Even if Peleti successfully persuaded us that Robertson provided ineffective assistance, Peleti would have to

show a reasonable probability that he would not have pleaded guilty but for Robertson's ineffective assistance. The district court found that Peleti would have pleaded guilty, and we review that finding for clear error. Peleti asserts that it is reasonably likely that he would have not pleaded guilty, but he does not explain why the district court's finding to the contrary is clearly erroneous. All he can do is return to his point about the difference between taking a bribe and taking an illegal gratuity, and his insistence that he would not have pleaded guilty to the former if he had known about the latter. But the district court agreed with Robertson that the written statement was powerful proof of guilt of bribery, and that finding is not clearly erroneous. And in the final analysis, the district court was entitled to hold Peleti to his word at the initial guilty plea proceeding, complete with the inference that his actions met the requirements of the bribery statute.

* * *

We AFFIRM the district court's decision to deny Peleti's motion to withdraw his guilty plea.