**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 5, 2009
Decided October 6, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-3465

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District Court for the Southern District of Indiana, |
| *Plaintiff-Appellee*, | Indianapolis Division. |
| *v.* | No. 1:04-CR-00155 |
| ANTONIO MENDOZA, | David F. Hamilton, |
| *Defendant-Appellant*. | *Chief Judge*. |

**O R D E R**

A jury found Antonio Mendoza guilty of conspiracy to possess and distribute methamphetamine, 21 U.S.C. §§ 846, 841(a)(1), and possession with intent to distribute, *id.* § 841(a)(1). The district court sentenced him to life imprisonment, the mandatory minimum sentence given the quantity of drugs and Mendoza's prior felony drug convictions. *See id.* § 841(b)(1)(A). Mendoza appeals, but his appointed counsel move to withdraw because they cannot identify any nonfrivolous argument to pursue. *See Anders v. California*, 386 U.S. 738 (1967). Mendoza opposes dismissal of his appeal. *See* CIR. R. 51(b).

At Mendoza's request counsel scrutinized the record searching for errors in the jury selection and sentencing proceedings but uncovered no potential defects. Counsel mention this process only to demonstrate that they discharged their duty to review the record for possible appellate claims, and because they conclude that the jury selection and sentencing

proceedings yielded no potential issues, we will not further discuss those aspects of Mendoza's case. *See United States v. Tabb*, 125 F.3d 583, 584 (7th Cir. 1997); *United States v. Wagner*, 103 F.3d 551, 553 (7th Cir. 1996). We instead confine our review to those potential issues evaluated in counsel's facially adequate brief and Mendoza's response. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

Before trial the government moved in limine to prohibit any reference to two letters written by Hugo Soto, a government witness, regarding Mario Garcia, a defendant in a separate drug case. Soto had first written the government proclaiming Garcia's innocence, but in his second letter, he asserted that he had lied in the first letter and offered to testify against Garcia. Prosecutors moved to exclude these letters as irrelevant and likely to confuse or prejudice the jury. In an oral ruling, the district court granted the government's motion without elaboration.

At trial the government called witnesses who testified about Mendoza's involvement in methamphetamine trafficking in Indianapolis, Indiana. Soto and his wife, Darlene, testified that Mendoza became their methamphetamine supplier in 2001. Darlene said that after she collected orders from buyers, her husband would contact Mendoza to arrange delivery of the drugs. Soto, Darlene, and Darlene's mother, Wanda McQueen, all recounted that they had received deliveries of up to a pound from Mendoza's brother Jose, his brother-in-law, or another man named "Longoria." The witnesses stated that exchanges were made in public places such as grocery stores and at the bar Soto owned in south Indianapolis. In addition, Soto, Darlene, and McQueen testified that they picked up drugs at one of the houses Mendoza used to process methamphetamine. During one of those drug runs, McQueen recounted, Jose was at the house and methamphetamine was cooking on the stove. Officer Steven Swarm of the Indianapolis Police Department confirmed that utility bills for the several houses associated with Mendoza's drug operations were registered in the names of his wife, Jose, or his brother-in-law.

In January 2002 Jason Johnson, a government informant, contacted Darlene to buy three ounces of methamphetamine and, if those drugs were satisfactory, an additional pound. According to Darlene, she saw Soto use her cell phone to call Mendoza to relay Johnson's order. Officer Swarm verified from telephone records that a call was made from Darlene's phone to a cell phone registered to Mendoza shortly after Johnson had contacted Darlene. Johnson testified that the following night he and Bobbie James, an undercover police officer, received their three-ounce order from Soto outside of his bar. Johnson said that he and Officer James later went into the bar to retrieve the remaining pound of drugs. Johnson and Darlene confirmed that Mendoza and his brother-in-law were also at the bar that night and that Mendoza sat alone while his brother-in-law left the bar with Soto to pick up the drugs intended for Johnson and Officer James. James could not remember seeing

Mendoza, but another police officer who was conducting surveillance testified that a car matching the description of Mendoza's pulled into the bar's parking lot on the night of the controlled buy. According to Officer James, after Soto and Mendoza's brother-in-law returned to the bar, Darlene met Johnson in a back room and handed over one pound of methamphetamine. Johnson, in turn, paid Soto for the drugs. Darlene testified that she then saw Soto and Mendoza go to the bar's kitchen where Soto handed over Johnson's money.

The government presented evidence of additional controlled buys between government informants and the Sotos. Mendoza did not testify or present evidence at trial. During closing argument, his lawyer attacked the credibility of the government's witnesses, emphasizing the fact that the witnesses' plea agreements made cooperation with the government mandatory and that they had received reduced sentences in exchange for their cooperation.

The jury found that the conspiracy and possession counts involved 500 or more grams of methamphetamine. At sentencing Mendoza made no objections to the presentence investigation report. Given the amount of drugs and Mendoza's two prior felony drug convictions, the district court imposed the mandatory sentence of life imprisonment on each count. *See* 21 U.S.C. § 841(b)(1)(A).

One possible argument evaluated by counsel is whether the district court abused its discretion by prohibiting mention of Soto's letters about Garcia. Rule 608(b) of the *Federal Rules of Evidence* bars extrinsic evidence of conduct bearing on a witness's character for truthfulness, but a trial judge has discretion to allow cross-examination about such conduct. FED. R. EVID. 608(b); *United States v. Holt*, 486 F.3d 997, 1002 (7th Cir. 2007). Rule 403 establishes the standard for the district court's exercise of discretion in evidentiary matters and permits even relevant evidence to be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion. FED. R. EVID. 403; *United States v. Seymour*, 472 F.3d 969, 971 (7th Cir. 2007). We review evidentiary rulings for abuse of discretion, but even when error is found, we will not reverse if the error was harmless. *United States v. Woods*, 556 F.3d 616, 620 (7th Cir. 2009); *United States v. Bonty*, 383 F.3d 575, 579 (7th Cir. 2004).

Here, the government moved to exclude Soto's about-face concerning Garcia on the grounds that this information was irrelevant and, even if relevant, would be prejudicial and confusing to the jury. In granting the government's motion, the district court did not specify which evidentiary rules justified excluding Soto's letters about Garcia. But we have held that district courts "retain wide latitude to impose reasonable limitations on cross-examination based on concerns about harassment, prejudice, confusion of the issues

or interrogation that is only marginally relevant." *United States v. Saunders*, 166 F.3d 907, 920 (7th Cir. 1999). Our review of the district court's exercise of discretion in limiting cross-examination is informed by whether the defendant had a "reasonable chance" to discredit the witness and pursue his own theory of the case. *United States v. Williamson*, 202 F.3d 974, 978 (7th Cir. 2000). In this case Mendoza's lawyer tried to discredit Soto by asking him about his plea agreement, which made cooperation mandatory, and the reduced sentence he received in exchange for his testimony. Pressing him to explain why he exonerated Garcia until striking a deal with the government might have assisted counsel's cross-examination, *see United States v. Skelton*, 514 F.3d 433, 443-44 (5th Cir. 2008); *United States v. McGee*, 408 F.3d 966, 979-82 (7th Cir. 2005), but even if we were to conclude that counsel should have been permitted to inquire about the letters while questioning Soto, we would also conclude that Mendoza was not harmed by the court's ruling because Soto's testimony was duplicative of, and corroborated by, the testimony of Darlene, McQueen, and Johnson. *See United States v. Beck*, 557 F.3d 619, 621 (8th Cir. 2009); *United States v. Span*, 170 F.3d 798, 803 (7th Cir. 1999).

The only other argument counsel considers is whether Mendoza could challenge the sufficiency of the evidence supporting his convictions. We view the trial evidence in the light most favorable to the government and will uphold the jury's verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see United States v. Bailey*, 510 F.3d 726, 733 (7th Cir. 2007). A conspiracy conviction under § 846 requires an agreement between two or more persons to fulfill a particular criminal objective, such as possessing or distributing drugs. *United States v. Kincannon*, 567 F.3d 893, 897 (7th Cir. 2009); *United States v. Colon*, 549 F.3d 565, 569 (7th Cir. 2008). For a possession conviction under § 841, even without proof of actual possession, a defendant may nevertheless be held accountable on a theory of constructive possession, which may be established by circumstantial evidence. *United States v. Campbell*, 534 F.3d 599, 605-06 (7th Cir. 2008); *United States v. Parra*, 402 F.3d 752, 761 (7th Cir. 2005). Soto, Darlene, and McQueen all testified that Mendoza utilized Jose, Longoria, and his brother-in-law to deliver his methamphetamine. McQueen also recounted seeing Jose monitoring the manufacture of methamphetamine at one of the houses Mendoza used for processing drugs. In addition, Johnson, Darlene, and two police officers testified to Mendoza's role in supplying the methamphetamine for the controlled buy in January 2002. Based on this evidence, it would be frivolous to argue that no rational jury could have concluded beyond a reasonable doubt that Mendoza conspired with at least Jose, Longoria, and his brother-in-law to possess methamphetamine for distribution and that he possessed methamphetamine in January 2002 as charged.

In his Rule 51(b) response, Mendoza first argues that his statutory right to a speedy trial was violated because of the two-and-one-half-year delay between indictment and trial.

But this argument is frivolous because Mendoza waived his rights under The Speedy Trial Act by failing to move to dismiss the indictment, *see* 18 U.S.C. § 3162(a)(2); *United States v. Gearhart*, 576 F.3d 459, 462 (7th Cir. 2009).

Mendoza then proposes to argue that trial counsel was ineffective for requesting continuances and for failing to object to the government's use of a prior conviction at trial and at sentencing. Challenges to counsel's performance, however, are best brought on collateral review and not direct appeal. *Massaro v. United States*, 538 U.S. 500, 504-05 (2003); *United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009). This is because the trial record in many cases will not reveal the facts necessary to decide whether counsel's actions were supported by a reasonable strategy. *Massaro*, 538 U.S. at 505; *United States v. Jackson*, 546 F.3d 801, 814 (7th Cir. 2008). In addition, a defendant who pursues an ineffective-assistance claim on direct appeal cannot relitigate the claim on collateral attack unless there has been an intervening change of law or a discovery of previously withheld evidence. *United States v. Peleti*, 576 F.3d 377, 383, (7th Cir. 2009); *Peoples v. United States*, 403 F.3d 844, 846 (7th Cir. 2005). Thus, we would decline to consider whether Mendoza could maintain a nonfrivolous ineffective-assistance claim.

Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.