In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-2079

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RONALD WILLIAMS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cr-00323-2 — **John Robert Blakey**, *Judge*.

ARGUED FEBRUARY 16, 2024 — DECIDED JANUARY 31, 2025

Before RIPPLE, BRENNAN, and JACKSON-AKIWUMI, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. Ronald Williams was a driver for hire. He drove customers to the store, to the doctor, wherever they needed to go. One of the jobs Williams accepted in April 2018 was transporting two teenage girls doing commercial sex work at his co-defendant's command. A jury convicted both Williams and his co-defendant of sex trafficking and conspiracy to commit sex trafficking. Williams

challenges whether the jury had sufficient evidence to find him guilty. The jury did, so we affirm.

## I

We recount the facts as they unfolded at trial, where the two victims were identified by the aliases Hannah Brown and Cyan Smith. When Williams met the girls, Hannah was seventeen years old, and Cyan had just turned sixteen. The teens hailed from South Bend, Indiana, and were vulnerable to exploitation. Hannah had cycled in and out of foster care and juvenile group homes. Both she and Cyan had a history of mental health challenges.

In April 2018, Hannah met Cyan after running away from a youth home. Hannah moved in with Cyan and her family. Both Hannah and Cyan felt like they needed to earn money. An opportunity seemed to present itself when an acquaintance of Hannah's connected her with a man named Kennedy Spencer, who had a history of profiting from commercial sex encounters. On April 4, 2018, Hannah contacted Spencer on Facebook, and he assured her that she and Cyan could earn "serious money" performing commercial sex acts.

Ronald Williams was an unlicensed driver for hire Spencer knew from the neighborhood. Spencer had hired Williams for jobs like taking his mother to the hospital and his nephew to school. Spencer had also hired Williams as transportation for commercial sex encounters Spencer arranged. On the night that Spencer and Hannah first connected, Spencer texted Williams, "Got new fresh meat," and said that Hannah and Cyan planned to arrive in Chicago on Sunday. Williams told Spencer, "let me know." Spencer also sent Williams explicit photos of Hannah.

About a week after Hannah moved in with Cyan's family, Cyan suffered an assault that sent her to the hospital. From there, she sent Spencer pictures of herself to explain why she was not on her way to Chicago. Text messages between Spencer and Williams show their displeasure at Cyan staying in South Bend. On April 9, 2018, Williams texted Spencer, asking whether Cyan showed up. Spencer said that Cyan had not come to Chicago and shared her hospital pictures with Williams. Williams responded that if Cyan "went to the hospital there has to be a police report" and stated he would "ask [his] girl [in] South [Bend if] she heard anything."

Cyan's mother blamed Hannah for the assault and refused to let Hannah stay with Cyan's family any longer. With nowhere else to go, Hannah went to meet Spencer in Chicago on April 9, 2018.

Spencer, anticipating Hannah's arrival, texted Williams to ask if Williams could provide transport for a commercial sex appointment in Ottawa, Indiana. Williams assented and inquired about Spencer's staffing plans, asking "who you supposed to use[?]" Spencer responded by sending him a picture of Hannah, saying "This 1 is on the train." At 9:43 p.m., Spencer texted Williams: "Got the package."

Hannah met Williams the day after she arrived in Chicago. She testified that Williams told her that he made money doing "the same thing as" Spencer. Spencer, for his part, told her she "could be honest with" Williams, and that assurance, she said, led her to truthfully tell Williams that she was only seventeen years old. In the month that followed, Williams drove Hannah to commercial sex appointments "[a] handful of times" and received a cut of the money that Hannah made during

the sexual encounters. He offered to lower the fee he charged for driving her if she had sex with him.

Meanwhile, Spencer maintained contact with Cyan, who was still in South Bend. They talked on the phone almost every day, and Cyan came to consider Spencer "a friend." In late April, Cyan felt renewed pressure to make money, so she decided to join Spencer in Chicago. She was particularly persuaded by Spencer's description of a customer called Stan who, Spencer said, would pay Cyan $2,000 to accompany him to a casino and spend the night with him, no sex involved.

When Cyan arrived in Chicago, Spencer and Williams picked her up at the train station in Williams's car. Cyan testified at trial that while she sat in the car, she heard Spencer and Williams express their anger towards Hannah. Spencer complained that Hannah had left him for another trafficker. Over the course of that week, Cyan continued to hear about Spencer's anger towards Hannah, to the point where he threatened to beat Hannah up if he saw her.

Spencer and Williams drove Cyan to a house, where a man was waiting. They walked her into the house, left her there, and Cyan had a sexual encounter with the man. The man paid Cyan, and she left the house to find Spencer and Williams waiting for her. Cyan told them that she was upset because she did not know what was going on and did not expect to perform commercial sex acts so soon. Spencer told her that they forgot to tell her. Cyan told Spencer that she only wanted to "see guys like Stan" who "didn't want to have sex with [her] for money." Spencer said that was fine, and Williams drove Spencer and Cyan back to Spencer's house.

During the time that Cyan stayed with Spencer, Williams continued to drive her to commercial sex appointments "[a]t least once a day." Whenever Williams drove Cyan, Spencer would take the money that Cyan received from clients and give one third to Cyan and one third to Williams. Cyan also testified that Williams took her to Burger King on one occasion. After about a week, Cyan escaped from Spencer's house.

Spencer and Williams subsequently were charged with sex trafficking and conspiracy to commit sex trafficking. The indictment set forth three counts against both men: conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594(c) (Count 1), sex trafficking Cyan in violation of 18 U.S.C. § 1591 (Count 2), and sex trafficking Hannah in violation of 18 U.S.C. § 1591 (Count 3). The men were tried jointly, and on, November 1, 2022, a jury found both men guilty of all three counts.

Williams now appeals his conviction.

## II

Williams bears a heavy burden in this appeal. We will overturn a jury verdict for insufficient evidence only "if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003). We view all evidence "in the light most favorable to the verdict." *United States v. Mullins*, 800 F.3d 866, 870 (7th Cir. 2015). Having done so, we conclude Williams has not met his burden because the jury had sufficient evidence to convict. Before we explain why, we provide background on the charges against Williams and the jury's verdict.

### 1. The charges

Williams was convicted for violating two statutes, 18 U.S.C. § 1591 and 18 U.S.C. § 1594. Section 1591 criminalizes sex trafficking children. *See* 18 U.S.C.S § 1591. Section 1594(c) makes it a crime to conspire to violate Section 1591.

Section 1591 provides multiple pathways by which a jury can find a defendant guilty. Under 18 U.S.C. § 1591(a):

**(a)** Whoever knowingly--

> **(1)** … recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> **(2)** benefits, financially or by receiving anything of value, from [doing the same],

knowing, or … in reckless disregard of the fact, that means of force, threats of force, fraud, [or] coercion … will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act [is guilty of sex trafficking].

In other words, a defendant is guilty if he or she knowingly facilitates or makes money from a commercial sex encounter and has reason to know that the victim was either forced or tricked into engaging in commercial sex, or has reason to know that the victim is a child.

The statute is particularly attentive to combatting the sex trafficking of children. Under the statute, if a defendant facilitates sex trafficking, the victim was under the age of eighteen, and "the defendant had a reasonable opportunity to observe the person[,] . . . the Government need not prove that the

defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years." 18 U.S.C. § 1591(c). Stated differently, if a defendant had a reasonable opportunity to observe the underage victim, the defendant's knowledge of the victim's age is irrelevant.

### 2. The jury verdict

The verdict form does not specify the precise pathway by which the jury found Williams guilty of Counts 2 and 3. For Count 2, sex trafficking Cyan, here is the relevant portion of the verdict form:

---

COUNT TWO (Cont'd)

If you find defendant RONALD WILLIAMS not guilty of COUNT TWO, then DO NOT answer the following TWO questions, and proceed to the next page.

If you find defendant RONALD WILLIAMS guilty of COUNT TWO, then answer the following TWO questions before proceeding to the next page.

1. We find that the government has proved beyond a reasonable doubt that defendant RONALD WILLIAMS knew or recklessly disregarded the fact that fraud, coercion or any combination of such means would be used to cause Cyan Smith to engage in a commercial sex act:

NO ☐                                           YES ☑

---

2. We find that the government has proved beyond a reasonable doubt that EITHER:

    a.      Defendant RONALD WILLIAMS:

        (1) knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means Cyan Smith; and

        (2) knew or recklessly disregarded that Cyan Smith was under 18 years of age or had a reasonable opportunity to observe Cyan Smith; and

        (3) knew or recklessly disregarded that Cyan Smith would be caused to engage in a commercial sex act;

    OR

    b.      Defendant RONALD WILLIAMS

        (1) knowingly benefitted, financially or by receiving a thing of value, from participation in a venture which has engaged in an act of recruiting, enticing, harboring, transporting, providing, obtaining, or maintaining by any means Cyan Smith; and

        (2) knew or recklessly disregarded that Cyan Smith was under 18 years of age; and

        (3) knew or recklessly disregarded that Cyan Smith would be caused to engage in a commercial sex act.

NO ☐                                                          YES ☑

And for Count 3, sex trafficking Hannah, here is the relevant portion of the verdict form:

---

<u>COUNT THREE</u> (Cont'd)

If you find defendant RONALD WILLIAMS not guilty of COUNT THREE, then DO NOT answer the following TWO questions, and proceed to the next page and sign the verdict form.

If you find defendant RONALD WILLIAMS guilty of COUNT THREE, then answer the following TWO questions before proceeding to the next page and signing the verdict form.

1. We find that the government has proved beyond a reasonable doubt that defendant RONALD WILLIAMS knew or recklessly disregarded the fact that fraud would be used to cause Hannah Brown to engage in a commercial sex act:

NO ☐                                                          YES ☑

2. We find that the government has proved beyond a reasonable doubt that EITHER:

   a.      Defendant RONALD WILLIAMS:

---

(1) knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means Hannah Brown; and

(2) knew or recklessly disregarded that Hannah Brown was under 18 years of age or had a reasonable opportunity to observe Hannah Brown; and

(3) knew or recklessly disregarded that Hannah Brown would be caused to engage in a commercial sex act;

OR

b.    Defendant RONALD WILLIAMS

(1) knowingly benefitted, financially or by receiving a thing of value, from participation in a venture which has engaged in an act of recruiting, enticing, harboring, transporting, providing, obtaining, or maintaining by any means Hannah Brown; and

(2) knew or recklessly disregarded that Hannah Brown was under 18 years of age; and

(3) knew or recklessly disregarded that Hannah Brown would be caused to engage in a commercial sex act.

| NO ☐ | YES ☑ |
|------|-------|

So, although the jury found Williams guilty, the verdict form does not reflect the jury's exact reasoning. Williams argues there was insufficient evidence to convict him under any of the scenarios the verdict form above outlines. The next three sections explain why we must reject this argument. We first evaluate the charges concerning Cyan, then Hannah, and we end with the conspiracy charge.

## III

We affirm Williams's conviction for sex trafficking Cyan because the record contained sufficient evidence for a reasonable jury to find that Wiliams: (1) knew Cyan was performing commercial sex acts, (2) transported her for those acts, (3) made money from those acts, (4) should have known she was a minor, and (5) even if he did not know Cyan was a minor, had a reasonable opportunity to observe her. *See* 18 U.S.C. § 1591.

To begin, to find Williams guilty under any theory, the jury had to find that Williams understood that Spencer caused Cyan to engage in commercial sex acts. Statements from Williams himself provided ample evidence of this. During trial, the jury saw and heard a video recording of the FBI's interview of Williams after his arrest. In that interview, Williams admitted that he knew Spencer planned to use Cyan and Hannah for commercial sex. When the FBI agents asked what Spencer was "doing with these girls," Williams replied, "[p]rostitution." The FBI agent asked, "And so . . . I mean so you knew what they were doing?" and Williams replied, "I had a good idea." Williams also explained what Spencer

meant when he said "fresh meat" was coming: It meant "women, girls." And Williams told the agents that on Cyan's first day in Chicago, he heard Spencer ask Cyan if she performed specific sexual activities. This evidence leaves little doubt for a jury that Williams understood Spencer's intentions for Cyan were for her to engage in commercial sex acts.

Additionally, the jury found that Williams knew or should have known fraud or coercion caused Cyan to comply with those plans. Cyan's testimony about her first day in Chicago supplied sufficient evidence on this topic. As for coercion, Cyan testified that Spencer and Williams made violent threats against Hannah in front of Cyan. Spencer threatened to beat Hannah up if he ever saw her and, as Cyan recalled, "[t]hey were both chiming in on things about her." Cyan understandably was intimidated by these threats: they "made [her] scared to leave" and feel like she had no option but to do what Spencer wanted because "that could be [her] next." A reasonable jury could determine that Williams knew or should have known that talking about beating up Hannah—the girl who introduced Cyan to Spencer—would have coerced Cyan into performing commercial sex acts.

The jury heard evidence of not just coercion, but fraud too. Cyan testified that after her first commercial sex encounter, she told Spencer in front of Williams that she was confused, did not know what was going on, and only wanted to meet clients like Stan who did not demand sex. Spencer told Cyan "[T]hat was fine and he would see [Stan's] availability." And yet, even after hearing that Cyan did not expect to engage in commercial sex activity, Williams continued to drive her to such appointments. Thus, a reasonable jury could easily

conclude that Williams understood Spencer caused Cyan to engage in commercial sex acts through fraud or coercion.

The next step is to determine whether Williams knowingly facilitated or knowingly profited from a commercial sex act involving Cyan. The jury heard evidence supporting both findings. As previously explained, Section 1591 criminalizes a variety of actions that facilitate the sex trafficking of minors or coerced adults, including "transport[ing]" victims. 18 U.S.C. § 1591(a). The jury heard from Cyan that Williams drove her to commercial sex appointments. And even if Williams had not transported Cyan, a reasonable jury could have found that Williams financially benefited from Cyan's sexual exploitation. Cyan testified that when Williams drove her to commercial sex appointments, he received one-third of the money clients paid. That constitutes financial benefit under the statute.

We next evaluate the relevance of Cyan's age. Section 1591 criminalizes facilitating or profiting from sex trafficking if the defendant knows or should know that the victim is under eighteen. Williams protests, but there was sufficient evidence for a jury to find that he knew or should have known Cyan's age.

The video recording of Williams's FBI interview, shown at trial, provides the requisite evidence. During the interview, the agents asked Williams to estimate Cyan's age from a picture they showed him. Williams guessed that Cyan was sixteen or seventeen. Williams challenges this evidence as insufficient because, he says, the picture could have been taken a long time ago, and the jury could not see the picture. He argues that Cyan could have looked different in the picture than

she did in person, and the jury would have no way of knowing.

That is certainly possible. But it is also possible for a reasonable jury to conclude, from Williams's estimation of Cyan's age in the picture, that when Williams first saw her he knew or should have known that she was under eighteen. As we have repeatedly stated, "[i]t is the jury's job, and not ours, to gauge the credibility of the witnesses and decide what inferences to draw from the evidence." *United States v. Leal*, 72 F.4th 262, 268 (7th Cir. 2023). We will therefore not "reweigh the evidence []or second-guess the jury's credibility determinations," as Williams asks us to do here. *United States v. Tavarez*, 626 F.3d 902, 906 (7th Cir. 2010).

Furthermore, Williams told the FBI agents that Cyan's behavior resembled that of a minor, not an adult. Williams first claimed during his interview that he had no idea Cyan and Hannah were under 18. He told the FBI agents that Cyan and Hannah "had [him] under the impression that these were professional women and that they were grown." But when the FBI agents asked, "Did they act grown?" Williams replied that Cyan "said some strange" things, like "[t]his will be my first time ever turning a date," by which he meant engaging in commercial sex acts. The fact that Williams could so quickly identify red flags about Cyan's age during the FBI interview could lead a reasonable jury to determine that he recklessly disregarded her age.

Even if no reasonable jury could have found that Williams recklessly disregarded Cyan's age, that would make no difference in this appeal. Williams would still be guilty under Section 1591 if he transported Cyan for commercial sex and "had a reasonable opportunity to observe" her. 18 U.S.C.

§ 1591(c). A reasonable jury could have found that Williams had that opportunity.

As previously explained, Section 1591 relieves the government of its burden to prove that the defendant knew or should have known the victim was a minor. *See* 18 U.S.C. § 1591(c) ("[T]he Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years."). In doing so, the statute shifts the burden to individuals to ensure that, if they participate in the commercial sex trade, they do not exploit children.

The jury heard several pieces of evidence that demonstrate Williams had a reasonable opportunity to view Cyan. He picked her up from the train station when she first arrived in Chicago and drove her to a commercial sex appointment. He walked her into the house where the client was waiting and was there to pick her up when she emerged. He transported her to more commercial sex appointments throughout the week, and they even went to Burger King together. These encounters amount to a reasonable opportunity to view Cyan.

Williams contends, with no case citation and no supporting evidence, that it is not enough that he had the opportunity to view Cyan. Rather, as he sees it, the government must also prove force, fraud, or coercion. That contradicts the plain language of the statute. Section 1591(a) makes someone guilty of sex trafficking if they use "force, threats of force, fraud, [or] coercion . . . *or* [if] the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a) (emphasis added). That disjunctive language creates two separate avenues by which a defendant can be found guilty. *Cf. Loughrin v. United States*, 573 U.S. 351, 357 (2014) ("To read the next clause, following the word 'or,' as

somehow repeating that requirement, even while using different words, is to disregard what 'or' customarily means. As we have recognized, that term's 'ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings.'" (quoting *United States v. Woods*, 571 U.S. 31, 45–46 (2013)). And if the trafficker had the opportunity to view the minor victim, knowledge of victim's age is irrelevant. *See* 18 U.S.C. 1591(c). The plain meaning of the statute cannot bear Williams's contrary interpretation.

As a result, sufficient evidence existed for the jury to find Williams guilty in a number of ways. There was no error.

## IV

In our review of the trial, there was as much sufficient evidence for a reasonable jury to find Williams guilty of sex trafficking Hannah as there was Cyan. In sum: (1) Williams knew that Spencer wanted to use Hannah for commercial sex acts, (2) Williams knowingly facilitated and profited from her exploitation, (3) Hannah told Williams she was under eighteen, and (4) Williams had a reasonable opportunity to observe her anyway.

Everything we said about Williams's knowledge about Spencer's intentions for Cyan also applies to Hannah. Williams made it clear in his FBI interview that he knew Spencer would cause these girls to engage in commercial sex acts. Spencer even sent Williams explicit photos of Hannah. And Hannah herself testified that Williams offered to reduce the price he charged for rides if she would have sex with him. There is consequently sufficient evidence for a reasonable jury to conclude that Williams knew Spencer caused Hannah to engage in commercial sex acts.

There is also sufficient evidence for a reasonable jury to find that Williams profited from Hannah's commercial sex acts. Hannah testified that Spencer made her pay Williams when he drove her to the commercial sex appointments. As previously stated, it is a jury's job, not ours, to evaluate the credibility of witnesses, *see Tavarez*, 626 F.3d at 906, and a reasonable jury could believe Hannah's testimony.

We also easily conclude that a jury could find that Williams knew Hannah was a minor. Hannah, after all, testified that she told Williams that she was under eighteen. According to Hannah, the day after she arrived in Chicago, Spencer told her that she could be honest with Williams, so she told him: "The truth. [She] was 17." That is all a jury needed to hear.

But, as with Cyan, even if the jurors did not believe Hannah's testimony that she shared her true age with Williams, that makes no difference. A jury could find that Williams had a reasonable opportunity to view Hannah. He drove her to multiple commercial sexual encounters, including one that was an hour away. During that time, Hannah testified, Williams could see her in the rearview mirror. Williams therefore had hours during which he could observe Hannah.

Sufficient evidence therefore exists for a jury to find Williams guilty of sex trafficking Hannah in violation of Section 1591.

## V

Having reviewed the evidence for Counts 2 and 3 concerning Cyan and Hannah, we turn to Williams's contention that the record lacked sufficient evidence for his Count 1 conspiracy conviction. We once again reject Williams's argument.

18 U.S.C. § 1594(c) provides that "[w]hoever conspires with another to violate section … 1591 shall be punished in the same manner as a completed violation of such section." Williams contends that he was not part of any conspiracy; he was just a driver who does all kinds of jobs for people in his neighborhood, from grocery store runs to transporting Spencer's commercial sex workers. That makes him no more liable, he says, than any driver for a taxicab company or private car service would be.

The trial evidence tells a different story. It demonstrates that Williams was actively invested in Spencer's plans for Cyan and Hannah. Spencer kept Williams up to date on Cyan's and Hannah's arrival times, and Williams was eager for them to arrive in Chicago. When Cyan was in the hospital, Williams even told Spencer he would have someone he knew in South Bend corroborate Cyan's story. And when Cyan and Hannah were in Chicago, he drove them to commercial sex appointments, knowing the nature of the appointments. This is sufficient evidence for a jury to find that Williams was an active participant in a conspiracy to sex traffic Cyan and Hannah.

If there is any doubt that these activities meet the legal definition of conspiracy to engage in sex trafficking, our case *United States v. Cephus*, 684 F.3d 703 (7th Cir. 2012), removes that doubt. There, we entertained a challenge to a defendant's conviction for conspiracy to entice minors to engage in prostitution. The defendant-appellant, Stanton Cephus, argued that the jury had insufficient evidence to convict him, because "he had just helped out his brother from time to time." *Id.* at 706. We rejected that excuse, finding that "[a]lthough Stanton didn't commit all the substantive offenses charged in the

indictment, he participated in the conspiracy by driving girls and women to their 'calls' and collecting money from the johns for his brother. He did not beat any of the prostitutes but he watched them being beaten and so was aware of the scope of the conspiracy he had joined." *Id.* The same applies to Williams. He, like Stanton, did not commit all the underlying offenses, but he drove Cyan and Hannah to their appointments, received money from them, and was aware of how Spencer exploited them. In short, there was enough evidence for a jury to find Williams guilty of conspiring to sex traffic Cyan and Hannah.

For the above reasons, we AFFIRM.