In the

# United States Court of Appeals

## For the Seventh Circuit

––––––––––––––

No. 19-1448

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*

*v.*

DAVID PEREZ,

*Defendant-Appellant*

––––––––––––––

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 CR 462-6 — **Rebecca R. Pallmeyer**, *Chief Judge*.

––––––––––––––

ARGUED OCTOBER 27, 2020 — DECIDED DECEMBER 23, 2021

––––––––––––––

Before SYKES, *Chief Judge*, and KANNE and ST. EVE, *Circuit Judges*.

SYKES, *Chief Judge*. David Perez was a member of the Latin Kings street gang in Maywood, Illinois, and served in several leadership positions in which he ordered or personally carried out acts of violence, including the attempted murder of a former gang member. He pleaded guilty to conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d),

and possessing a firearm as a felon, *id.* § 922(g)(1). The district judge sentenced him to concurrent terms of 336 months and 120 months in prison, respectively—below the advisory range under the Sentencing Guidelines.

Perez challenges his sentence on two grounds. He first argues that the judge incorrectly held that the attempted-murder predicate for the RICO violation increased the maximum penalty on that count to life in prison under 18 U.S.C. § 1963(a). He also contends that the judge committed a procedural error by failing to consider his argument under 18 U.S.C. § 3553(a)(6) about the need to avoid unwarranted sentencing disparities with similarly situated defendants.

We affirm. The judge correctly determined that the RICO violation was "based on" an act of racketeering that is punishable by life imprisonment under state law— discharging a firearm in an attempted murder—a predicate act that raised the applicable maximum penalty from 20 years to life under § 1963(a). *See United States v. Brown*, 973 F.3d 667, 709 (7th Cir. 2020). The argument about unwarranted sentencing disparities is both waived and meritless. It is waived because at sentencing the judge twice asked Perez's counsel whether he was satisfied with the court's explanation of the sentence, and both times counsel failed to mention any § 3553(a)(6) concerns. Waiver aside, a sentence within or below a properly calculated Guidelines range necessarily complies with § 3553(a)(6). *United States v. Sanchez*, 989 F.3d 523, 540–41 (7th Cir. 2021).

## I. Background

From 2004 to 2008, and again from 2012 to 2015, David Perez was a member of the Latin Kings street gang operating in the Village of Maywood just west of Chicago. The Maywood branch of the gang was divided into two "circles," each with its own set of leaders—the older members or "Junior" circle and the younger members or "Shorty" circle. At various points during his membership, Perez held several leadership positions, including the "Inca" of the Shorty circle—essentially its president. *See, e.g.*, *United States v. Porraz*, 943 F.3d 1099, 1101 (7th Cir. 2019). As Inca, Perez recruited new members, enforced dues obligations, directed the use of armed patrols, ordered violent beatings to punish gang members, and instructed members to commit acts of violence.

On May 10, 2014, the Junior circle ordered the murder of Victim 1, a runaway former gang member. Perez saw Victim 1 at a restaurant in Melrose Park on Mother's Day, May 11. He alerted other gang members, who came to the scene and shot Victim 1 multiple times in the stomach and chest. The victim survived but suffered permanent colon damage and requires a colostomy bag for the rest of his life.

In 2016 a federal grand jury returned an indictment charging Perez and 14 other gang members with racketeering and other offenses related to their participation in the Maywood Latin Kings. Perez was charged in nine counts, including racketeering conspiracy, conspiracy to commit murder in aid of the racketeering enterprise, attempted murder in aid of the enterprise, assault with a dangerous weapon in aid of the enterprise, and four counts of unlawful possession of a firearm by a felon. He pleaded guilty to

racketeering conspiracy, *see* § 1962(d) (Count 1), and unlawful possession of a firearm by a felon, *see* § 922(g)(1) (Count 16).

Perez did not admit in his plea declaration to facts surrounding the attempted murder of Victim 1, but he later stipulated that he participated in the murder—indeed, he ordered and agreed with other gang members to carry out the act. He further stipulated, and the district judge found, that the facts of the attempted murder were proven beyond a reasonable doubt.

Punishments for RICO violations are typically capped at 20 years in prison, but the maximum increases to life imprisonment when a "violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." § 1963(a). Because RICO defines "racketeering activity" as "any act … chargeable under State law," 18 U.S.C. § 1961(1), the applicable statutory maximum often turns on state law.

The parties disagreed about whether the attempted murder of Victim 1 increased Perez's statutory maximum on Count 1 to life in prison under § 1963(a). Perez argued that the maximum remained 20 years because under Illinois law attempted murder carries a maximum life sentence only if the defendant "personally discharged a firearm that proximately caused great bodily harm." 720 ILL. COMP. STAT. 5/8-4(c)(1)(D). It's undisputed that Perez did not personally fire the shots at Victim 1, so he argued that the maximum sentence could not be enhanced under § 1963(a).

The judge disagreed, reasoning that Perez faced a statutory maximum of life on Count 1 because sentences for

RICO conspiracies do not hinge on acts committed by a specific defendant; rather, they reflect the operation of the criminal enterprise as a whole. That is, the attempted murder of Victim 1 was a predicate racketeering act attributable to all members of the conspiracy.

In his sentencing memorandum and again at the sentencing hearing, Perez asked the court to consider the sentences of coconspirators Jose Pena and Ulises De La Cruz when determining his sentence. Pena was sentenced to 96 months on Count 1, and De La Cruz was sentenced to 210 months for the same count.

After considering the factors set forth in § 3553(a), the judge sentenced Perez to concurrent terms of 336 months and 120 months on Counts 1 and 16, respectively—below the Guidelines range of 360 months to life. The judge characterized Perez's participation in the conspiracy as "shocking and horrifying," finding that he had engaged in "hideous, stupid, [and] meaningless violence." The judge considered the permanent injuries to Victim 1, the culture of fear created by the Latin Kings, and the need for general deterrence. Balancing these considerations, the judge concluded that "the guideline range is about right in this case," but she imposed a sentence below that range in recognition of Perez's "genuine and heartfelt" acceptance of responsibility.

The judge twice asked Perez's counsel if there were any issues she had overlooked or should address. Counsel requested his client's placement in a particular Bureau of Prisons facility but did not mention sentencing disparities—either generally or with respect to coconspirators Pena and De La Cruz in particular.

## II. Discussion

Perez challenges the judge's ruling regarding the statutory maximum penalty for the RICO conviction and her failure to address his argument about unwarranted sentencing disparities. We review claims of legal and procedural error de novo. *United States v. Durham*, 766 F.3d 672, 685 (7th Cir. 2014).

### A. Life Sentence Eligibility

As we've noted, the statutory maximum sentence for a RICO offense is ordinarily 20 years, but the maximum increases to life "if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." § 1963(a). Perez reprises the argument he made below that the enhanced maximum does not apply here because attempted murder is punishable by life in prison under Illinois law only when the defendant "personally discharged a firearm that proximately caused great bodily harm." 730 ILL. COMP. STAT. 5/5-8-1(a)(1)(d)(iii); § 5/8-4(c)(1)(D). It's undisputed that Perez ordered the killing of Victim 1 but did not personally fire the gun. So, Perez reasons, the statutory maximum for his RICO conspiracy conviction remained capped at 20 years because his violation was not "based on" a predicate act for which the maximum penalty under state law includes life imprisonment.

This argument misunderstands the language and operation of § 1963(a). The proper inquiry is whether the RICO "violation"—here, conspiracy—was *based on* a predicate crime punishable by life imprisonment. The judge therefore correctly framed the question and likewise correctly answered it. The RICO violation was based in part on the

predicate racketeering act of attempted murder—that is, a coconspirator's attempt to kill Victim 1 by shooting him, causing great bodily harm. Under Illinois law, that version of attempted murder is punishable by life imprisonment.

We addressed a similar argument in *United States v. Brown*, 973 F.3d 667 (7th Cir. 2020). There, the defendants were members of a street gang and were convicted of RICO conspiracy predicated on racketeering acts that included multiple first-degree murders. Illinois law authorizes a sentence of life imprisonment for first-degree murder when certain aggravating factors are present. 730 ILL. COMP. STAT. 5/5-4.5-20(a), 5/5-8-1; 720 ILL. COMP. STAT. 5/9-1(a) & (b). Like Perez, the defendants maintained that their maximum sentences should have been capped at 20 years notwithstanding these predicates. Their reasoning was slightly different: they argued that because the RICO statute criminalizes the agreement to commit an act, not the act itself, the relevant state analogue was conspiracy, which under Illinois law is not punishable by life imprisonment. *Brown*, 973 F.3d at 709.

We rejected the argument, explaining that "section 1963 requires that the 'violation'—in this case, the conspiracy—be 'based on a racketeering activity for which the maximum penalty includes life imprisonment.'" *Id.* What mattered, we said, was that "[t]he defendants' conspiracies were all *based on* murders for which the maximum penalty includes life imprisonment." *Id.*

The same conclusion follows here. Perez's RICO violation—conspiracy—was "based on" predicate acts of racketeering that included a coconspirator's attempted murder of Victim 1 by discharging a firearm and causing great bodily

harm, which is a crime punishable by life in prison under Illinois law. The judge properly applied the enhanced maximum penalty under § 1963(a).

**B. Sentencing Disparities**

Perez also argues that the judge procedurally erred by failing to consider his argument under § 3553(a)(6) about the need to avoid unwarranted disparities between similarly situated defendants. He pointed to codefendants Pena and De La Cruz, who were sentenced to 96 months and 210 months, respectively, for their involvement in the conspiracy. He argued that both codefendants were responsible for more criminal conduct and were ranked higher than Perez within the Latin Kings. The judge passed over this argument, though she imposed a below-Guidelines sentence of 336 months on the conspiracy count in recognition of Perez's expression of remorse. (The 120-month term on the firearm count is concurrent.)

As an initial matter, this argument is waived. After announcing the sentence, the judge twice asked Perez's counsel if there were other issues she had overlooked. First, she asked: "Are there other issues you feel I haven't addressed or any other recommendations you think I should make?" Counsel raised a point about his client's prison assignment but did not mention sentencing disparities. After a bit more discussion, the judge inquired again: "Are there other issues?" Perez's counsel *still* did not mention any sentencing disparities. The judge thus gave counsel not one but two meaningful opportunities to identify any overlooked arguments. The failure to make use of those opportunities is a waiver. *United States v. Garcia-Segura*, 717 F.3d 566, 569 (7th Cir. 2013).

Even if not waived, the argument is meritless. We have held that the Sentencing Guidelines "are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017). Because the judge "correctly calculated and carefully reviewed the Guidelines range, [she] necessarily gave significant weight and consideration to the need to avoid unwarranted disparities." *Gall v. United States*, 552 U.S. 38, 54 (2007). Thus, a sentence below or within a properly calculated Guidelines range, as this one is, "*necessarily* complies with § 3553(a)(6)." *Sanchez*, 989 F.3d at 541 (emphasis added) (internal quotation marks omitted).

AFFIRMED